## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RAMSEY TOSSA, RAKIA TOSSA,
SILVIA TOSSA, and RHONDA TOSSA,

      Plaintiffs,                            Case No. 14-12319

v.                                        Hon. Gerald E. Rosen

ADAM TARDIF, *et al.,*

      Defendants.

_____/

## OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL AND FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         September 28, 2015

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiffs Ramsey Tossa, Rakia Tossa, Silvia Tossa, and Rhonda Tossa

commenced this action in this Court on June 12, 2014, complaining of civil rights

violations committed against them at their home in Sterling Heights, Michigan.

Specifically, in an amended complaint filed on July 25, 2014, Plaintiffs have

asserted federal constitutional claims of unlawful entry, unreasonable execution of

a search warrant, and excessive force against a number of law enforcement officers employed by the federal Drug Enforcement Administration ("DEA"), the City of Sterling Heights, and the Michigan State Police.  Plaintiffs also have asserted a federal claim under 42 U.S.C. § 1983 against the City of Sterling Heights, as well as state-law claims of willful and wanton misconduct and gross negligence against the individual Defendant police officers.  Each of these federal and state-law claims arises from a law enforcement raid of Plaintiffs' home in the early morning hours of July 26, 2011, which Plaintiffs allege was based on a search warrant issued without probable cause, and which was allegedly carried out through unreasonable means including the use of excessive force.  This Court's subject matter jurisdiction rests upon Plaintiffs' assertion of claims arising under federal law.  *See* 28 U.S.C. § 1331.

Through the present pair of motions, the Defendant federal and Sterling Heights law enforcement officers, as well as the Defendant City of Sterling Heights itself, seek the dismissal of certain of Plaintiffs' claims for failure to state a claim, and an award of summary judgment in their favor as to other claims asserted in Plaintiffs' first amended complaint.  In support of their motion for partial dismissal, the federal Defendants argue (i) that Plaintiffs' conclusory allegations are insufficient to sustain their challenge to the warrant authorizing the

2

search of their home, (ii) that Plaintiffs' claim of a knock-and-announce violation is defeated by their failure to allege a forced entry into their home, and (iii) that to the extent Plaintiffs' claims of excessive force rest upon the Defendant officers' use of handcuffs, these claims fail for lack of allegations of any resulting physical injury. The Sterling Heights Defendants, for their part, contend that summary judgment should be awarded in their favor on the claims Plaintiffs have asserted against them, where (i) affidavits submitted by the individual Sterling Heights law enforcement officers named in Plaintiffs' complaint purportedly establish beyond dispute that these individuals played no role in any unlawful conduct that might have occurred in the course of the raid of Plaintiffs' home, and (ii) the allegations of Plaintiffs' first amended complaint purportedly fail to support a viable claim of municipal liability against the Defendant City of Sterling Heights.

Defendants' two motions have been fully briefed by the parties. Having reviewed the parties' briefs and their accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal issues are sufficiently presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings

3

on these motions.

## II.  **FACTUAL BACKGROUND**

Because Defendants filed their motions before the parties conducted any discovery,[1] the following account is derived almost exclusively from the allegations of Plaintiffs' first amended complaint.  For present purposes, Plaintiffs' factual allegations are taken as true.[2]

Plaintiffs Ramsey and Rakia Tossa are husband and wife, and they were 66 and 64 years old, respectively, at the time of the events giving rise to this suit.  The couple resides at a home on Marc Drive in Sterling Heights, Michigan, and two of their adult daughters, Plaintiffs Silvia and Rhonda Tossa, live with them.[3]

At approximately 2:20 a.m. on July 26, 2011, federal, state, and local law enforcement officers executed a search warrant at the Tossa residence.  According

---

[1]To be accurate, Plaintiffs were permitted in a June 18, 2014 order to conduct limited discovery, but only for the purpose of identifying the several "John Doe" defendants named in their initial complaint.  As a result of this limited discovery, Plaintiffs filed a first amended complaint in which the names of various law enforcement officers were substituted in place of the "John Doe" defendants.

[2]As discussed below, the motion filed by the Defendant City of Sterling Heights and the individual Sterling Heights police officers is accompanied by the affidavits of each individual officer, and the Sterling Heights Defendants point to these affidavits as support for the dismissal of Plaintiffs' claims against these individual officers.  Later in this opinion, the Court considers whether it may appropriately rely on these affidavits in resolving the Sterling Heights Defendants' motion.

[3]Mr. and Mrs. Tossa have two other children, a son and a daughter, who reside elsewhere and were not present at the incident giving rise to this suit.

4

to Plaintiffs' complaint, the officers who participated or assisted in this raid included (i) Defendants Adam Tardif, Kent Kleinschmidt, David Powell, Cheryl Benedict, Justin Holton, Jeremy Fitch, Jeff Moore, Steven West, and Lloyd G. Hopkins of the federal Drug Enforcement Administration ("DEA"),[4] (ii) Defendants Helen Tsouroullius, Kenneth Bresinski, Kristie Kaufman, Tom Stechly, Nancy Dupre, and Carly Hall of the Sterling Heights Police Department,[5] and (iii) a Michigan State Police trooper with the last name of Unterbrink.[6]

Following the arrival of these Defendant law enforcement officers at Plaintiffs' residence in the early morning hours of July 26, 2011, one or more of the federal officers "banged on the front door" of the home without identifying the Defendants as police officers.  (First Amended Complaint at ¶ 21.)  Upon opening the door to his home, Mr. Tossa was grabbed, knocked to the floor, dragged outside to his front lawn, and forced to the ground by one of the Defendant officers.  One or more of the Defendant officers then kneeled on Mr. Tossa,

---

[4]In some instances, Plaintiffs' first amended complaint identifies these federal officers only by their last names, but the motion filed by the individual federal Defendants supplies first names for these officers.  In addition, while the complaint names "S.A. Holten" as one of these federal officers, the federal Defendants' motion lists "Holton" as the correct spelling of this officer's last name.

[5]The Sterling Heights Defendants indicate in their motion that the correct spelling of the last name of the first of these individuals is "Tsouroullius," and not "Tsouroullis" as set forth in Plaintiffs' first amended complaint.

[6]The record does not disclose the first name of this Michigan State Police officer.

triggering a pre-existing asthma condition, and "applied unnecessary, excessive and unreasonable force" to Mr. Tossa's head, neck, chest, and back.  (*Id.* at ¶¶ 23, 32(b).)

After Mr. Tossa was removed from his home, the Defendant officers next dragged Mrs. Tossa outside as she was dressed only in sleepwear, and they threw her to the ground and handcuffed her through the use of "excessive, unreasonable, and unnecessary force."  (*Id.* at ¶ 24.)  Likewise, Silvia and Rhonda Tossa were removed from the home dressed only in sleepwear, thrown to the ground, and handcuffed.  Although Plaintiffs cooperated with the Defendant officers at all times, neither resisting the officers nor refusing to follow their orders, the officers nonetheless employed excessive force, used "obscene and foul language," and pointed firearms at Plaintiffs as they conducted their raid of Plaintiffs' home.  (*Id.* at ¶¶ 26-31.)  According to Plaintiffs' brief in response to the federal Defendants' motion, the Tossas were "held on their front lawn for nearly a half an hour, while the Defendants performed a perfunctory search and quickly determined that they had the wrong house."  (Plaintiffs' 1/20/2015 Response Br. at 4-5.)[7]

In the wake of this July 26, 2011 incident, Plaintiffs brought the present suit

---

[7]Plaintiffs' complaint lacks any similar allegations as to the length of Plaintiffs' detention on their front lawn or the results of the search of Plaintiffs' home, and the quoted passage from Plaintiffs' brief is unsupported by citation to the record.

on June 12, 2014, asserting a variety of federal and state-law claims against the

sixteen individual Defendant law enforcement officers who allegedly participated

in or were somehow involved in this raid, as well as the City of Sterling Heights

where six of these officers were employed at the time.  Specifically, Plaintiffs'

first amended complaint asserts (i) federal Fourth Amendment claims of unlawful

entry, unreasonable search and seizure, and excessive force against the federal

Defendant law enforcement officers under *Bivens v. Six Unknown Named Agents*

*of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999 (1971), (ii)

analogous federal claims of Fourth Amendment violations against the Defendant

state and local law enforcement officers and the City of Sterling Heights under 42

U.S.C. § 1983, and (iii) state-law claims of willful and wanton misconduct and

gross negligence against each of the individual Defendant law enforcement

officers.[8]

### III. ANALYSIS

_____

[8]In a stipulated order dated November 26, 2014, the parties agreed to substitute the United States of America for the individual federal Defendant law enforcement officers named as parties to Count V of Plaintiffs' first amended complaint, in which Plaintiffs asserted tort claims arising under state law.  After the Defendant United States of America moved to dismiss Count V on the ground that Plaintiffs failed to timely exhaust their administrative remedies before pursuing these tort claims against the federal government, the parties agreed to the entry of a December 17, 2014 stipulated order dismissing these claims against the Defendant United States of America only. Accordingly, the United States is no longer a party to this suit, and the individual federal Defendant law enforcement officers face liability only under Plaintiffs' federal *Bivens* claims of Fourth Amendment violations.

**A.     The Standards Governing Defendants' Motions**

In the first of the two motions pending before the Court, the individual

federal Defendant law enforcement officers seek the dismissal of certain of the

claims asserted against them for "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion brought under

Rule 12(b)(6), the Court must construe the complaint in a light most favorable to

Plaintiffs and accept all well-pled factual allegations as true.  *League of United*

*Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Yet, "the

tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 1949 (2009).  Moreover, "[w]hile a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted).

Rather, to withstand a motion to dismiss, the complaint's factual allegations,

accepted as true, "must be enough to raise a right to relief above the speculative

level," and to "state a claim to relief that is plausible on its face."  *Twombly*, 550

8

U.S. at 555, 570, 127 S. Ct. at 1965, 1974.

The motion brought by the Sterling Heights Defendants, in contrast, seeks an award of summary judgment in favor of these Defendants on each of the claims asserted against them in Plaintiffs' first amended complaint. Under the Federal Rule governing this motion, summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

9

declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the nonmoving party may seek to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," and the Court may then defer consideration of the motion, deny it, or grant an opportunity for discovery. Fed. R. Civ. P. 56(d).

## B.   Plaintiffs' Allegations Are Insufficient to Support Their Challenge to the Warrant Authorizing the Search of Their Home.

In Count II of their first amended complaint, Plaintiffs allege that the federal Defendant law enforcement officers (the "Federal Defendants") violated their rights under the Fourth Amendment by unlawfully entering and searching their home in reliance on a warrant issued without probable cause. The Federal Defendants seek the dismissal of this claim, arguing that Plaintiffs' complaint features wholly conclusory allegations that are insufficient to state a plausible claim (i) that the warrant to search Plaintiffs' home was issued without probable cause, or (ii) that this warrant was procured through false or misleading statements. The Court agrees.

It is a bedrock principle of Fourth Amendment law that a search warrant may not issue unless a reviewing judge or magistrate determines that "given all the circumstances set forth in the affidavit . . . there is a fair probability that

10

contraband or evidence of a crime will be found in a particular place." *Mills v. City of Barbourville,* 389 F.3d 568, 575-76 (6th Cir. 2004) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "In evaluating the issuing magistrate's probable cause determination, [the courts] apply a flexible 'totality of the circumstances' approach, which permits us to evaluate the particular facts of each case." *Mills,* 389 F.3d at 576. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." 389 F.3d at 576.

   In this case, the warrant to search Plaintiffs' residence rested upon an affidavit prepared by Defendant Adam Tardif, a task force officer for the federal DEA. (*See* Federal Defendants' Motion, Ex. 1, Search Warrant Affidavit.)[9] In this affidavit, Defendant Tardif described a single-car rollover crash of a vehicle driven by an individual named Jason Yousif. (*See id.* at ¶ 3(i).) A Michigan State Police ("MSP") trooper who was dispatched to the scene of this accident determined that the car was registered to Yousif at Plaintiffs' Marc Drive address in Sterling Heights. (*See id.*)

   According to Tardif's affidavit, Yousif stated during the crash investigation

---

[9] Plaintiffs challenge the Federal Defendants' reliance on this search warrant affidavit in their motion, arguing that the affidavit lies outside the scope of the pleadings and accompanying exhibits that the Court may properly consider in ruling on a Rule 12(b)(6) motion to dismiss. The Court addresses this issue below.

11

that "he had both [m]arijuana and firearms in his vehicle," and a search of the car's
passenger compartment revealed "approximately 17 ounces of [m]arijuana and a
[m]arijuana plant, packaged in 9 different containers to include 'Mason' jars,
plastic shopping baggies, 'Zip Loc' style clear plastic baggie(s) and a black plastic
garbage bag." (*Id.* at ¶ 3(j).)  The MSP trooper also found two loaded guns in the
vehicle, as well as "a scale, a micro scope, a roll of clear plastic baggies, a wooden
box — later identified as a tool to dry [m]arijuana — and a DTE Energy billing
statement" for an address in Highland Park, Michigan.  (*Id.*)  Other documents in
the car also referenced this Highland Park address, and Yousif purportedly stated
in an interview that he was a "care giver of [m]arijuana" who  maintained a
marijuana cultivating operation at this address and had four patients, although he
was only able to produce "three expired patient cards for dispensing medical
[m]arijuana."  (*Id.* at ¶¶ 3(j), (k).)

Based on this and other information, as well as Defendant Tardif's
"education, training and experience," (*id.* at ¶ 4), Tardif opined in his affidavit that
there was probable cause to believe that evidence of criminal activity could be
found at the residence on Marc Drive in Sterling Heights that was listed as
Yousif's address on his vehicle registration.  On July 25, 2011, a state district
court judge issued a warrant authorizing the search for and seizure of controlled

substances, firearms, drug paraphernalia, narcotic trafficking records, and other items at the Marc Drive premises, (*see* Federal Defendants' Motion, Ex. 1, Search Warrant), and a number of federal, state, and local law enforcement officers executed this search warrant at Plaintiffs' home in the early morning hours of July 26, 2011.

Under this record, the Federal Defendants argue that the doctrine of qualified immunity shields them from any possible liability for their purported participation in an unlawful search of Plaintiffs' residence without probable cause. As the Federal Defendants observe, a law enforcement officer ordinarily is immune from liability for a search allegedly conducted without probable cause if the officer "relies on a judicially secured warrant" in performing this search. *Hale v. Kart,* 396 F.3d 721, 725 (6th Cir. 2005). This grant of qualified immunity is unavailable only where the application for the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Hale,* 396 F.3d at 724 (citing *Malley v. Briggs,* 475 U.S. 335, 343-45 (1986)). In the Federal Defendants' view, Plaintiffs' bare allegation of "unlawful entry onto and into their premises without probable cause," (First Amended Complaint at ¶ 46), is manifestly inadequate to overcome the qualified immunity granted to them under federal law, and to instead establish that the warrant authorizing the search of

13

Plaintiffs' home was so lacking in indicia of probable cause that the Federal Defendants could not have reasonably relied on this warrant in carrying out their search of Plaintiffs' residence.  Rather, the Federal Defendants maintain that Plaintiffs' claim of an unlawful search of their home without probable cause rests upon precisely the "[t]hreadbare recital[] of the elements of a cause of action" that the Supreme Court has deemed insufficient, standing alone, to state a claim that will withstand scrutiny under Rule 12(b)(6).  *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949.

In response, Plaintiffs do not point to any allegations in their first amended complaint that could, if proven, overcome the Federal Defendants' lawful reliance on a judicially secured search warrant, nor do they request leave to further amend their complaint by asserting additional facts that could defeat the Federal Defendants' appeal to qualified immunity.[10]  Rather, they first contend that the Federal Defendants' request for qualified immunity should be rejected as resting upon materials outside the pleadings that the Court may not consider in deciding a motion brought under Rule 12(b)(6).  In particular, Plaintiffs note that the Federal

---

[10]The Court recognizes that at one point in their response to the Federal Defendants' motion, Plaintiffs do seek leave to amend their complaint to incorporate additional facts they have learned since they filed their first amended complaint.  (*See* Plaintiffs' Br. in Response to Federal Defendants' Motion at 23-25.)  This request for leave, however, concerns a different issue raised in the Federal Defendants' motion, which the Court addresses below.

14

Defendants' motion is accompanied by complete, unredacted copies of the July 25, 2011 search warrant and Defendant Tardif's supporting affidavit, and they complain that these unredacted documents were not made available to them prior to the Federal Defendants' filing of their motion.  To the contrary, when Plaintiffs first sought to acquire these materials through Freedom of Information Act ("FOIA") requests made prior to this litigation, they evidently were given only redacted versions of the search warrant and supporting affidavit.  Against this backdrop, Plaintiffs argue that the Federal Defendants "should not be permitted to sandbag" them by submitting unredacted documents for the Court's consideration that were not yet part of the available record at the time Plaintiffs filed their initial and amended complaints.  (Plaintiffs' Br. in Response to Federal Defendants' Motion at 8.)

Plaintiffs' contention, however, conflates two separate issues arising from the Federal Defendants' proposed reliance on the unredacted search warrant and affidavit in support of their motion, and these two issues are governed by distinct legal standards.  First, to the extent Plaintiffs suggest that these unredacted materials should be deemed "outside of the pleadings," and hence unavailable for consideration in resolving a Rule 12(b)(6) motion, because they were not part of the record until the Federal Defendants filed their present motion, (Plaintiffs' Br.

15

in Response to Federal Defendants' Motion at 7), the Sixth Circuit has explained that a document may be treated as part of the pleadings if it is "referred to in the pleadings and is integral to the claims" asserted in those pleadings. *Commercial Money Center, Inc. v. Illinois Union Insurance Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007). In this case, the search warrant and Defendant Tardif's supporting affidavit are expressly referenced in Plaintiffs' complaint, (*see* First Amended Complaint at ¶¶ 18-19), and it is clear that these materials are integral to Plaintiffs' claim that the Federal Defendants' entry into and search of their home unlawfully rested upon a warrant issued "without probable cause," (*id.* at ¶ 46). It follows that the Court may consider the unredacted search warrant and supporting affidavit in deciding the Federal Defendants' Rule 12(b)(6) motion to dismiss. Indeed, it is difficult to see how the Court could meaningfully assess the viability of Plaintiffs' claim of "unlawful entry onto and into their premises without probable cause," (First Amended Complaint at ¶ 46), unless the Court were able to consider the *entirety* of the information provided to the state court judge and inquire whether this information gave rise to a fair probability that contraband or evidence of a crime would be found in Plaintiffs' home.

To be sure, Plaintiffs perhaps were operating at a bit of a disadvantage when they filed their complaint before they had been given unredacted copies of the

search warrant and Defendant Tardif's supporting affidavit. Yet, Plaintiffs cite no authority for the proposition that a court's review of the record in deciding a Rule 12(b)(6) motion is confined to those materials in the plaintiff's possession at the time the complaint was filed.[11] To the extent that the delayed production of such materials poses potential concerns of "sandbagging" or unfairness, such concerns are properly addressed not through the Court's disregard of documents that plainly are integral to Plaintiffs' claims, but instead through measures that ensure Plaintiffs' opportunity (i) to review these documents before they must respond to a Rule 12(b)(6) motion that relies in part on these materials, and (ii) to amend their

---

[11]Plaintiffs instead raise two other points that are immaterial to the issue presented here. First, Plaintiffs contend that the unredacted search warrant and supporting affidavit do not fit within any recognized exception to the general rule that a court's review of a Rule 12(b)(6) motion must be confined to the pleadings and materials deemed to be part of the pleadings. (*See* Plaintiffs' Br. in Response to Federal Defendants' Motion at 7-8.) As explained, however, the search warrant and affidavit are properly viewed as part of the pleadings, and thus need not satisfy any "exception" to be considered by the Court.

Next, Plaintiffs suggest that the search warrant and affidavit reflect the Federal Defendants' "version of the facts," and they argue that they should be "allowed to conduct discovery regarding these facts" before the Court assesses the viability of their challenge to the search warrant. (*Id.* at 8.) Yet — with one caveat addressed below — the Court's consideration of Plaintiff's challenge to the search warrant does not demand that the Court take sides as to the accuracy of the facts set forth in Defendant Tardif's search warrant affidavit. Rather, this affidavit memorializes what the state court was told when Defendant Tardif sought a warrant to search Plaintiffs' home, and the relevant question, for present purposes, is whether the statements in this affidavit suffice to support the state court's finding of probable cause to conduct this search. As explained, Plaintiffs have offered only the conclusory allegation that the warrant was issued without probable cause, and this bare statement of the elements of a Fourth Amendment claim of a search without probable cause is insufficient under *Twombly* and *Iqbal* to state a plausible claim to relief.

17

complaint if warranted by the new information disclosed in these unredacted documents.  Plaintiffs were afforded this opportunity here, where they had seven weeks to review the unredacted search warrant and affidavit between the Federal Defendants' December 2, 2014 filing of their motion to dismiss and Plaintiffs' filing of their response on January 20, 2015.

Despite this opportunity for review of a more complete record, Plaintiffs have failed to propose any amendments to their complaint that would provide more specific support for their bare-bones, conclusory allegation that the warrant authorizing the search of their home was issued without a proper showing of probable cause.[12]  Consequently, the Court finds that Plaintiffs have failed to state a viable claim that the Federal Defendants unlawfully searched their home without probable cause, where these law enforcement officers were entitled to rely on a state court's finding of probable cause, and where Plaintiffs' complaint lacks any allegations which, if proven, would demonstrate that the search warrant issued by the state court was so lacking in indicia of probable cause as to render an officer's reliance on the warrant unreasonable.

Plaintiffs' remaining challenge to the warrant to search their home rests on

---

[12]As noted earlier, Plaintiffs also are challenging the search warrant on another ground, and they propose to amend their complaint with allegations that purportedly would provide further support for this separate challenge.  The Court turns to this question immediately below.

the allegation that Defendant Tardif "deliberately and/or recklessly provided misleading, inaccurate, false and incorrect information" in his affidavit that led a state court to issue this search warrant without a proper showing of probable cause.  (First Amended Complaint at ¶ 19.)  In seeking the dismissal of this claim, the Federal Defendants once again argue that it rests solely upon a bare recital of the elements of a cause of action — in particular, a violation of the standard articulated in *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674 (1978), for evaluating a law enforcement officer's conduct in securing a warrant, *see Hale,* 396 F.3d at 726 — while lacking any specific allegations as to "what statements [in Tardif's affidavit] were false or misleading or what information was omitted." (Federal Defendants' Motion, Br. in Support at 10.)  In response, Plaintiffs first suggest that it is "impossible" for them "to know without further discovery the exact nature of the[] lies and significant omissions" in Defendant Tardif's affidavit, and they ask for an opportunity to pursue this discovery.  (Plaintiffs' Br. in Response to Federal Defendants' Motion at 8.)  Yet, the key points in this affidavit are (i) that marijuana and other evidence of drug trafficking activity were found in a vehicle driven by and registered to Jason Yousif, and (ii) that this vehicle was registered at the Marc Drive address in Sterling Heights where Plaintiffs reside.  Plaintiffs do not suggest what evidence they might unearth in

discovery that would call these statements into question, and they cannot be permitted to go forward with their claim of a *Franks* violation based solely on a boilerplate, wholly conclusory allegation that Defendant Tardif's affidavit contained unspecified "misleading, inaccurate, false and incorrect information" that led the state court to issue a search warrant without probable cause.

In apparent recognition that the allegations presently offered in support of this claim are insufficient, Plaintiffs request in the alternative that they be permitted to amend their complaint to incorporate the following "additional facts now known that would show serious, exculpatory omissions from Defendant Tardif's affidavit:"

> (i)  that Plaintiffs were uninvolved in and "entirely unrelated to" the car accident that led Defendant Tardif to obtain a search warrant for Plaintiffs' residence;
>
> (ii) that the warrant was sought from a state court in Dearborn, Michigan, which is located in a county different from the ones in which Plaintiffs reside and in which Jason Yousif's single-car accident occurred, and from a judge who purportedly has a reputation for being "anti-marijuana;" and
>
> (iii) that the description of Plaintiffs' home in Defendant Tardif's affidavit gives rise to the inference "that Defendant Tardif visited and observed [Plaintiffs'] home prior to drafting the search warrant affidavit," and thereby suggests Defendant Tardif's awareness "that Mr. Yousif did not reside at the house and that the current residents had no connection to Mr. Yousif."

(Plaintiffs' Br. in Response to Federal Defendants' Motion at 23-24.)[13]

As the Federal Defendants aptly observe, none of these additional facts, even if alleged in an amended complaint and ultimately borne out by evidence, demonstrate "even the slightest falsehood or reckless disregard for the truth by [Defendant] Tardif." (Federal Defendants' Reply Br. at 5.) While some of these additional facts arguably (and at best) would somewhat diminish the likelihood that Mr. Yousif resided at the Marc Drive address at the time of his accident, the Fourth Amendment demands only "probable cause" to search, and not a certainty that contraband or evidence of a crime will be found at a particular location. *See United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000). Moreover, Defendant Tardif's omission of these additional facts from his affidavit hardly suggests the intent to mislead that Plaintiffs must show as an element of their *Franks* claim, *see Hale,* 396 F.3d at 726-27, where Plaintiffs offer only the barest of speculation that

---

[13]As to this last point, Plaintiffs claim that Defendant Tardif's affidavit acknowledges Mr. Yousif's statement at the time of his auto accident "that he resided at a different address in Highland Park," as opposed to the Marc Drive address in Sterling Heights. (*Id.* at 24 n.15.) In fact, while the affidavit describes the discovery in Mr. Yousif's vehicle of a DTE Energy billing statement and other documents referencing a Highland Park address, it does not recount any statement by Mr. Yousif that he lived at this Highland Park address. (*See* Federal Defendants' Motion, Ex. 1, Search Warrant Affidavit at ¶ 3(j).) Rather, the documents in Mr. Yousif's vehicle referred to a business, Diverse Engineering Simulation, as being located at the Highland Park address, and Mr. Yousif stated only that he "established and kept a [m]arijuana growing/cultivation operation at" this address. (*Id.* at ¶¶ 3(j), (k).) These statements in Tardif's affidavit, then, are in no way inconsistent with the notion that Mr. Yousif lived at the Marc Drive address in Sterling Heights where his vehicle was registered.

21

Defendant Tardif was aware of the absence of a connection between Mr. Yousif and Plaintiffs as the then-current residents of the Marc Drive premises.  As for the location and purported reputation of the state court judge who issued the search warrant, Plaintiffs fail to identify any authority for the proposition that such considerations are in any way relevant to a *Franks* inquiry.  Accordingly, the Court concludes that Plaintiffs have failed to plead a viable claim of a *Franks* violation in Defendant Tardif's procurement of a warrant to search Plaintiffs' home, and that Plaintiffs' proposed amendments to their complaint would not cure the defects in this claim.

**C.      Plaintiffs' Complaint Lacks Allegations of Forced Entry That Could Support Their Claim of a Fourth Amendment Knock-and-Announce Violation.**

Count II of Plaintiffs' first amended complaint charges the Federal Defendants with, among other things, unlawfully carrying out their search of Plaintiffs' home, (*see* First Amended Complaint at ¶ 46), and this challenge to the manner in which the Federal Defendants executed the search warrant appears to rest in part on the allegation that one or more of these federal law enforcement officers "banged on the front door" of Plaintiffs' home "without identifying themselves as police officers," (*id.* at ¶ 21).  To the extent that Plaintiffs mean through these allegations to accuse the Federal Defendants of a "knock-and-

22

announce" violation, the Federal Defendants argue that any such claim is subject to dismissal, in light of the allegations elsewhere in Plaintiffs' complaint showing that there was no forced entry into Plaintiffs' home.[14]  The Court agrees.

In *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S. Ct. 1914, 1918 (1995), the Supreme Court held that "in some circumstances an officer's unannounced entry into a home" might run afoul of the Fourth Amendment's protection against unreasonable searches and seizures.  In so ruling, the Court observed that "[a]t the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority." *Wilson,* 514 U.S. at 929, 115 S. Ct. at 1915.  The Court determined that "this common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment," explaining that it had "little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure."  514 U.S. at 929, 934, 115 S. Ct. at 1915, 1918.

─────────────

[14]The Federal Defendants acknowledge that Plaintiffs have raised other challenges, beyond their knock-and-announce claim, to the manner in which the Defendant law enforcement officers executed the search warrant, but they do not seek the dismissal of these other challenges in their present motion.  (*See* Federal Defendants' Reply Br. at 3.)

As the Federal Defendants correctly observe, the pertinent Supreme Court and Sixth Circuit precedents consistently recognize that forced entry is an essential element of a claimed knock-and-announce violation. Just as *Wilson* characterizes the "knock and announce" rule as permitting a law enforcement officer to "break open the doors of a dwelling" after first "announc[ing] his presence and authority," *Wilson,* 514 U.S. at 929, 115 S. Ct. at 1915, subsequent Supreme Court decisions confirm that this rule protects against the risks inherent in "an unannounced entry," including "the destruction of property occasioned by a forcible entry," *Hudson v. Michigan,* 547 U.S. 586, 594, 126 S. Ct. 2159, 2165 (2006) (internal quotation marks and citations omitted); *see also Richards v. Wisconsin,* 520 U.S. 385, 387, 117 S. Ct. 1416, 1418 (1997) (explaining that the knock-and-announce rule requires that "police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry").

Likewise, the Sixth Circuit has described the knock-and-announce rule as dictating that "[a]bsent exigent circumstances, it is unreasonable under the Fourth Amendment for an officer to enter a dwelling without first knocking and announcing his presence and authority." *United States v. Dice,* 200 F.3d 978, 982 (6th Cir. 2000), *abrogated on other grounds by Hudson,* 547 U.S. 586, 126 S. Ct.

24

2159; *see also Marcilis v. Jones,* No. 10-2683, 494 F. App'x 535, 537 (6th Cir. Aug. 14, 2012) ("The failure of police officers to knock and announce prior to forcibly entering a location to execute a search warrant, absent exigent circumstances, is a violation of the Fourth Amendment."); *Ingram v. City of Columbus,* 185 F.3d 579, 588 (6th Cir. 1999) (explaining that "[u]nder the Fourth Amendment, officers must knock and announce their presence and authority before entering a private residence"); *United States v. Spikes,* 158 F.3d 913, 924 (6th Cir. 1998) (noting the claim in that case that "the police failed to comply with the 'knock and announce' rule by not waiting long enough after knocking and announcing their presence before entering the residence").  As explained by the Court of Appeals, this rule "serves to respect the sanctity of a person's home by affording notice to those inside so that they may open the door peaceably and without the needless destruction of property, as well as by avoiding the possibility of a violent confrontation is those inside mistook the police for intruders."  *Spikes,* 158 F.3d at 925.

In this case, Plaintiffs allege that after "[o]ne or more of the Federal . . . Defendants banged on the front door" of their home "without identifying themselves as police officers," Mr. Tossa responded by "open[ing] the door" to his home.  (First Amended Complaint at ¶¶ 21-22.)  It follows from these allegations

that the Federal Defendants did not violate the Fourth Amendment knock-and-announce requirement, as it cannot be said that they entered Plaintiffs' home, whether forcibly or otherwise, "without first knocking and announcing [their] presence and authority." *Dice,* 200 F.3d at 982. While Plaintiffs allege that the Federal Defendants failed to identify themselves as police officers or otherwise announce their presence and authority as they knocked on the door to Plaintiffs' home, they further state that Mr. Tossa foreclosed any possibility of a forced entry into the home by opening the door in response to the officers' "bang[ing]." Absent such a forced entry, the Federal Defendants cannot be held liable for a knock-and-announce violation.

The arguments offered by Plaintiffs against this conclusion are not persuasive. In particular, Plaintiffs point to language in a number of decisions emphasizing the importance of the requirement that police officers announce their presence before executing a search warrant, *see, e.g., Ingram,* 185 F.3d at 590 (cautioning that "courts should hesitate to approve unannounced police entries into private residences"); *Spikes,* 158 F.3d at 925 (opining that the "proper trigger point" for determining whether the police have complied with the knock-and-announce rule and may enter a home "is when those inside should have been alerted that the police wanted entry to execute a warrant"), and noting that the

knock-and-announce rule serves interests beyond the prevention of property

damage resulting from a forced entry, *see, e.g., Dice,* 200 F.3d at 982 ("At its

heart, the [knock-and-announce] rule exists to protect the occupants of private

residences."); *United States v. Martin,* No. 03-5691, 112 F. App'x 456, 459 (6th

Cir. Oct. 8, 2004) (explaining that "the purpose of the [knock-and-announce] rule

is to notify the [occupants] inside [a home] that policemen are at the door and want

to come in, thus protecting property and safety").  Yet, while it is undoubtedly true

that announcement of police presence is an essential and indispensable element of

the knock-and-announce rule, and that this rule serves "several important

interests," only one of which is avoidance of the "needless destruction of private

property" attendant to a forced entry, *Dice,* 200 F.3d at 982, the fact remains that

***no*** case identified by Plaintiffs (or in the Court's own research) has found a

violation of the knock-and-announce rule where there was no forced entry of a

residence, or where, as here, an occupant of the home opened the door before the

police attempted a forced entry.  Accordingly, the Court finds that Plaintiffs have

failed to state a viable claim that the Federal Defendants committed a knock-and-

announce violation in their execution of the warrant to search Plaintiffs' home.[15]

---

[15]Moreover, in view of the absence of any case law finding a violation of the knock-and-announce rule under circumstances akin to those presented here, the Court readily concludes that the doctrine of qualified immunity would shield the Federal Defendants from liability for any knock-and-announce claim Plaintiffs could pursue arising from the facts of this case.  *See*

**D.     Plaintiffs May Pursue Claims of Excessive Force Based in Part on the Defendant Officers' Use of Handcuffs, Despite the Absence of Allegations of Physical Injury Attributable Specifically to the Use of Handcuffs.**

Count I of Plaintiffs' first amended complaint asserts Fourth Amendment claims of excessive force against the individual federal Defendant law enforcement officers. As the final issue advanced in their motion, the Federal Defendants seek the dismissal of these claims to the extent that they are based upon the officers' alleged use of handcuffs during the course of their interactions with Plaintiffs. In support of this request, the Federal Defendants point to the absence of allegations in the first amended complaint that any of the four Plaintiffs suffered physical injuries as a direct result of being handcuffed, and they contend that the law precludes a claim of excessive force due to handcuffing unless there are resulting physical injuries. Be that as it may, the Court agrees with Plaintiffs that their complaints of inappropriate handcuffing are merely one part of a larger series of allegations of excessive force, and that these allegations must be viewed in their totality, rather than segmented into distinct types of allegedly unlawful activity, in assessing the viability of Plaintiffs' claims of excessive force.

As the Federal Defendants correctly observe, the Sixth Circuit has held that

_Anderson v. Creighton,_ 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987) (explaining that a government official surrenders his entitlement to qualified immunity only where the unlawfulness of his conduct is "apparent" in "light of pre-existing law").

"when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." *Neague v. Cynkar,* 258 F.3d 504, 508 (6th Cir. 2001); *see also Lyons v. City of Xenia,* 417 F.3d 565, 575-76 (6th Cir. 2005) (explaining that "[i]n order to reach a jury" on a claim of excessive force due to handcuffing, "the plaintiff must allege some physical injury from the handcuffing," and must also "show that the officers ignored [the] plaintiff's complaints that the handcuffs were too tight").  In this case, Plaintiffs' complaint does not identify any physical injuries they suffered that are expressly attributable to the Defendant officers' use of handcuffs, nor do Plaintiffs allege that they made any complaints to the officers that the handcuffs were too tight.  It follows, in the Federal Defendants' view, that Plaintiffs have failed to state a viable claim of excessive force due to the use of handcuffs.

Yet, the claims of excessive force asserted by Plaintiffs here do not rest solely on the use of handcuffs, but rather cite the Defendant officers' use of handcuffs as merely one of various unlawful measures these officers allegedly employed against the four Plaintiffs in the course of executing the warrant to search their home.  As to Mr. Tossa, for example, the complaint alleges that after he opened the door to his home, the Defendant officers "grabbed him and knocked

29

him to the floor and then dragged him outside to his front law and forced him to the ground."  (First Amended Complaint at ¶ 22.)  Plaintiffs further allege that one or more of the Defendant officers "applied unnecessary, excessive and unreasonable force" to Mr. Tossa's "head, neck, chest and back areas," resulting in a "serious life threatening obstruction" of his breathing.  (*Id.* at ¶ 23.)  Similarly, the complaint alleges that the Defendant officers dragged Mrs. Tossa and her two daughters out of their home, threw them to the ground, and handcuffed them, while also pointing their weapons at the four Plaintiffs and directing obscene and foul language at them.  (*Id.* at ¶¶ 24-29.)  Plaintiffs allege that throughout this incident, they "cooperated with and did not resist" the Defendant officers, nor did they "refuse to follow" the officers' orders.  (*Id.* at ¶ 31.)

Against this backdrop, the Court finds that the cases cited by the Federal Defendants are not controlling here, as they describe the elements of a claim of excessive force that rests solely and distinctly on the use of handcuffs.  In this case, by contrast, the use of handcuffs is only one a number of ways in which Plaintiffs allege that the Defendant officers employed excessive force.  As Plaintiffs observe, an excessive force inquiry requires consideration of the totality of the circumstances presented in a particular case, and turns upon a variety of factors such as the severity of the crime at issue, whether the plaintiff posed an

immediate threat to the safety of officers or others, and whether the plaintiff was actively resisting the officers' lawful activities. *See Miller v. Sanilac County,* 606 F.3d 240, 251, 253 (6th Cir. 2010). In the Court's view, the Defendant officers' alleged use of handcuffs as they executed the warrant to search Plaintiffs' home is an inseparable part of the totality of the circumstances that a trier of fact must consider in weighing these factors and determining whether the degree of force employed by the officers was objectively reasonable.

Indeed, as Plaintiffs point out, the Defendant officers' alleged use of handcuffs in this case might well bear upon the lawfulness of the actions taken by officers after the handcuffs were applied, as a finding of excessive force can arise from the continued use of force after an individual has been handcuffed and subdued. *See, e.g., Baker v. City of Hamilton,* 471 F.3d 601, 607 (6th Cir. 2006) (citing that court's repeated holdings that "the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law"). At a minimum, then, evidence of the Defendant officers' alleged use of handcuffs will almost surely be relevant to the excessive force inquiry, and there is little to be gained by dismissing a discrete claim arising from this specific activity when evidence of this handcuffing will continue to play a role in Plaintiffs' remaining claims of excessive force. Accordingly, because Plaintiffs' allegations of handcuffing are

31

2:14-cv-12319-LJM-SDD   Doc # 63   Filed 09/28/15   Pg 32 of 42   Pg ID 821

material to the totality of the circumstances that must be considered in resolving

Plaintiffs' claims of excessive force, the Court declines to treat these allegations as

intended to support a separate claim that should be assessed in isolation from

Plaintiffs' allegations of other forms of excessive force employed during the same

incident.

**E.     The Sterling Heights Defendants Have Failed to Rebut Plaintiffs' Showing of a Need for Discovery in Order to Produce Evidence in Support of Their Claims.**

In Count III of their first amended complaint, Plaintiffs have asserted claims

under 42 U.S.C. § 1983 against Defendants Helen Tsouroullius, Kenneth

Bresinski, Kristie Kaufman, Tom Stechly, Nancy Dupre, and Carly Hall of the

Sterling Heights Police Department (the "Sterling Heights Defendants") and two

other individual Defendants,[16] alleging that these law enforcement officers used

excessive force against Plaintiffs and otherwise violated the Fourth Amendment

protection against unreasonable searches and seizures in their execution of the

warrant to search Plaintiffs' home.  (*See* First Amended Complaint at ¶ 50.)  In

their present motion, the Sterling Heights Defendants seek an award of summary

---

[16]Defendant Tardif and a Michigan State Trooper with the last name of Unterbrink also are identified as parties to the § 1983 claims asserted in Count III of the complaint.  The inclusion of Defendant Tardif in this count presumably reflects the allegation elsewhere in the complaint that in addition to serving as a DEA agent, Tardif also was "employed by the City of Hamtramck, Michigan, as a police sergeant, and was acting under color of state law."  (First Amended Complaint at ¶ 9.)

judgment in their favor on these § 1983 claims, pointing to affidavits in which each of these individual officers denies that he or she played any active role in the search of Plaintiffs' home that could give rise to liability for any alleged violation of Plaintiffs' Fourth Amendment rights, and contending that Plaintiffs have failed to produce any evidence that casts doubt on these denials of liability. In response, Plaintiffs have submitted the affidavit of their counsel under Fed. R. Civ. P. 56(d) stating that discovery is needed in order to pursue the evidence called for in the Sterling Heights Defendants' motion, and they argue that this motion should be denied as premature until they have the opportunity to conduct this discovery. As discussed below, the Court finds that Plaintiffs have the better of the argument on this issue.

As the Sterling Heights Defendants observe, Plaintiffs' first amended complaint is largely lacking in specifics as to which particular Defendant law enforcement officers participated in the alleged Fourth Amendment violations giving rise to Plaintiffs' federal claims. (*See, e.g.,* First Amended Complaint at ¶ 23 (alleging that "one or more of the Defendants, unknown at this time, applied unnecessary, excessive and unreasonable force on Plaintiff RAMSEY TOSSA's head, neck, chest and back areas").) In their motion, the Sterling Heights Defendants propose to resolve this uncertainty as to which Defendant officers

33

played what role in the search of Plaintiffs' home.  Specifically, they have

produced affidavits from each of the six Sterling Heights officers named in

Plaintiffs' complaint, setting forth the roles and responsibilities of these

individuals in the execution of the warrant to search Plaintiffs' home.  Four of

these individuals — Defendants Tsouroullius, Hall, Dupre, and Kaufman — state

in their affidavits (i) that they were employed as civilian dispatch officers on the

date of the incident giving rise to this suit, (ii) that on that day, they were working

at the Sterling Heights Police Department, and thus were not present at Plaintiffs'

home as part of the law enforcement team that searched this residence, and (iii)

that they had no supervisory role over the DEA raid of Plaintiffs' home or over

any other officers named as Defendants in this case.  (*See* Sterling Heights

Defendants' Motion, Ex. G, Tsouroullius Aff.; Ex. H, Hall Aff.; Ex. I, Dupre Aff.;

Ex. J, Kaufman Aff.)  The remaining two Sterling Heights officers, Defendants

Bresinski and Stechly, acknowledge in their affidavits that they were dispatched to

Plaintiffs' residence on the date of the raid, but they state that they were present

only to provide traffic control and perimeter support, and that, in this role, they

could not see the front of Plaintiffs' home and did not witness the actual raid of

the premises or any use of force on Plaintiffs.  (*See* Sterling Heights Defendants'

Motion, Ex. E, Bresinski Aff; Ex. F, Stechly Aff.)

As the Sterling Heights Defendants correctly point out, these affidavits, if fully credited, would defeat each of the § 1983 claims asserted by Plaintiffs against these individual Defendant officers.  It is a well-established principle of federal § 1983 law that "[e]ach defendant's liability must be assessed individually based on his own actions."  *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir. 2010).  In the specific context of § 1983 claims of excessive force, while a plaintiff need not show that each defendant officer "actively participated in striking" him or her, an officer who has not directly inflicted harm may be held liable for "fail[ing] to act to prevent the use of excessive force" by other officers only if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  *Smoak v. Hall,* 460 F.3d 768, 784 (6th Cir. 2006) (internal quotation marks and citation omitted).  In this case, four of the six Sterling Heights Defendants state in their affidavits that they were not even on the scene of Plaintiffs' home at the time that any excessive force might have been employed, and the other two Sterling Heights Defendants indicate that they were not in a position to intervene in any use of excessive force by any other Defendant officer, as any such activity occurred out of their view from the perimeter of the premises.

In response, Plaintiffs concede that they are not yet in a position to challenge the statements made in the affidavits accompanying the Sterling Heights Defendants' motion. Nonetheless, they note that essentially no discovery has been conducted in these proceedings,[17] and they contend that Defendants' request for summary judgment should therefore be denied as premature. In particular, Plaintiffs point to a provision in the Federal Rule governing Defendants' motion that authorizes the Court to deny or defer consideration of this motion, and also to allow time for the parties to take discovery, if Plaintiffs "show[] by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition" to Defendants' motion. Fed. R. Civ. P. 56(d). In accordance with this provision of Rule 56, Plaintiffs have submitted the affidavit of their counsel stating (i) that, to date, the limited discovery authorized by the Court enabled Plaintiffs only to identify the law enforcement officers involved in the incident giving rise to this case, and did not otherwise "address the factual issues underlying this case," (ii) that even the limited materials produced to date are suggestive of "direct involvement in the logistics and deployment of the raid, search, and seizure by" the Sterling Heights Defendants, (iii) that apart from this

---

[17]As noted earlier, Plaintiffs were granted the opportunity to take limited discovery for the purpose of identifying the "John Doe" defendants named in their initial complaint.

limited production, the parties have not yet "exchanged any written discovery, including initial disclosures under Rule 26, nor have any depositions been taken," and (iv) that Plaintiffs "require the opportunity to serve discovery requests . . . concerning, among other matters, the individual Sterling Heights Defendants' involvement in the raid, search, and seizure of the Plaintiffs," and to "depose the individual Defendants" concerning these matters. (Plaintiffs' Response to Sterling Heights Defendants' Motion, Ex. 4, Nemeth Rule 56(d) Aff. at ¶¶ 4, 6, 10, 12, 14.)

In their reply in further support of their summary judgment motion, the Sterling Heights Defendants do not even acknowledge Plaintiffs' appeal to Rule 56(d), much less suggest any reason why the affidavit of Plaintiffs' counsel might be insufficient to trigger this provision and warrant the denial of Defendants' motion until Plaintiffs have been given an opportunity to seek support for their claims through discovery. Instead, they continue to fault Plaintiffs for failing to produce "any evidence" that might rebut the affidavits of the Sterling Heights officers, (Sterling Heights Defendants' Reply Br. at 1, 3, 5), without any apparent recognition that Rule 56(d), if satisfied, excuses such an absence of evidence. This failure to address the possible applicability of Rule 56(d) here constitutes a waiver of the Sterling Heights Defendants' opportunity to contest Plaintiffs' appeal to this provision. *See Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th

Cir. 2005) *(*explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived" (internal quotation marks and citations omitted)).

Moreover, the courts have recognized that where, as here, a summary judgment motion is filed "early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," a district court should "fairly freely" grant the relief authorized under Rule 56(d). *Burlington Northern Santa Fe Railroad Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation,* 323 F.3d 767, 773 (9th Cir. 2003). While it is true that "[b]are allegations or vague assertions of the need for discovery are not enough under Rule 56([d])," and that a party who appeals to this provision must "describe with some precision the materials [it] hopes to obtain with further discovery, and exactly how [it] expects those materials would help [it] in opposing summary judgment," *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir. 2009) (internal quotation marks and citations omitted), the Court is satisfied that the affidavit of Plaintiffs' counsel fulfills these requirements.

At bottom, the Sterling Heights Defendants' motion evidently rests on the premise that the lack of involvement of the Sterling Heights officers in the raid of Plaintiffs' home is so cut-and-dried that the dismissal of the claims against these

38

officers is inevitable.  And, to be sure, the present record indicates that certain of the Sterling Heights officers named as defendants were civilian dispatchers who were not even at the scene of the raid, so that there is little, if any, likelihood that these individuals were involved with or participated in any unlawful activity during the course of the raid.  Yet, the Sterling Heights Defendants have identified no rule or other authority that would permit the Court to determine as a matter of law, at the outset of this suit and before the parties have conducted any discovery, that Plaintiffs will be unable to turn up any factual support for certain of their allegations, or that the statements made in the Sterling Heights officers' affidavits will not be contradicted or otherwise called into question through any further discovery efforts.  Neither have the Sterling Heights Defendants identified any legal basis upon which the Court could determine at this juncture whether factual assertions in an affidavit are inherently credible and unlikely to be contradicted, or whether they warrant further exploration in discovery.[18]  Rather, Rule 56(d) provides an avenue through which a party can explain why it cannot yet justify its

---

[18]To be sure, the Sterling Heights Defendants note in their summary judgment briefing that under Fed. R. Civ. P. 11(b)(3), a party's factual contentions must either "have evidentiary support" or be likely to have such support "after a reasonable opportunity for further investigation or discovery," and they suggest that Plaintiffs' continued pursuit of their claims against some or all of the Sterling Heights officers might run afoul of this Rule 11 obligation. The Court need not address this question at this juncture, however, in light of the absence of any indication that the issue of possible Rule 11 violations or sanctions has been properly presented for the Court's resolution.

opposition to a summary judgment motion and request an opportunity to pursue discovery that may unearth evidentiary support for its position, and the Court finds that Plaintiffs have made a sufficient showing to warrant relief under this provision.[19]

Before leaving this matter, however, it is important to emphasize that if discovery fails to disclose admissible evidence in support of Plaintiffs' § 1983 claims against the Sterling Heights officers — or, for that matter, any other claim asserted by Plaintiffs — the Court would expect Plaintiffs to voluntarily dismiss any such unsupported claims.  Indeed, in their response to the Sterling Heights Defendants' motion, Plaintiffs suggested that they would consider the dismissal of their claims against Defendants Tsouroullius, Hall, Dupre, and Kaufman, provided that the statute of limitations for these claims would be deemed tolled in the event that Plaintiffs were to turn up information in discovery that would provide a basis

---

[19]The Court notes that through their present motion, the Sterling Heights Defendants also seek the dismissal of (i) the state-law claims asserted by Plaintiffs against the individual Sterling Heights officers, and (ii) the federal § 1983 claim asserted against the Defendant City of Sterling Heights.  Each of these requests, however, is predicated on the assumption that the Court would grant summary judgment in favor of the individual Sterling Heights officers on the § 1983 claims asserted against these individuals.  (*See* Sterling Heights Defendants' Motion, Br. in Support at 13-15.)  In light of the Court's decision not to award summary judgment on these claims, it follows that Plaintiffs also may continue to pursue their state-law claims against the Sterling Heights Defendants and their § 1983 claim against the Defendant municipality.

for imposing liability on one or more of these officers.[20]  As they proceed through discovery, Plaintiffs should be mindful of the continuing obligation imposed under Fed. R. Civ. P. 11 to reevaluate their claims and dismiss those for which discovery fails to provide evidentiary support.  *See B & H Medical, L.L.C. v. ABP Administration, Inc.,* 354 F. Supp.2d 746, 748-49 (E.D. Mich. 2005), *aff'd,* 526 F.3d 257 (6th Cir. 2008).

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Individual Federal Defendants' December 2, 2014 motion for partial dismissal (docket #44) is GRANTED IN PART, as to (i) Plaintiffs' challenges in Count II of their first amended complaint to the validity of the warrant authorizing the search of their home, and (ii) the claim in Count II of a knock-and-announce violation, and is otherwise DENIED.

---

[20]The Sterling Heights Defendants rejected this offer in their reply in further support of their motion, insisting that they were entitled to the unconditional dismissal with prejudice of the claims against these four officers.

Next, IT IS FURTHER ORDERED that the Sterling Heights Defendants'

January 14, 2015 motion for summary judgment (docket #50) is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  September 28, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 28, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135