UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMSEY TOSSA,

       Plaintiff,

v.

ADAM TARDIF, *et al.*,

       Defendants.

_____/

Civil No. 2:14-cv-12319

Judge Laurie J. Michelson
Mag. Judge Stephanie Dawkins Davis

## **DEFENDANTS' BRIEF OPPOSING APPOINTMENT OF COUNSEL**

Pursuant to the Court's request at the status conference held on January 23, 2018, defendants[1] submit this brief opposing appointment of counsel for plaintiff Ramsey Tossa. From 2014 until October 3, 2017, Mr. Tossa was represented in this private civil suit by at least three attorneys from two different law firms. However, his counsel withdrew when he "failed to attend meetings" or "return phone calls" from his attorneys. (Dkt. 130, Emergency Motion to Withdraw).

---

[1] I.e., DEA Agents Kent Kleinschmidt, Cheryl Davis (f/k/a Cheryl Benedict), Jeremy Fitch, Justin Holton, Jeffrey Moore, and Steven West and DEA Task Force Officer Adam Tardif,

Mr. Tossa did not object to the withdrawal of his retained counsel. He has also repeatedly informed the Court that he is willing and able to represent himself in this case. In addition, Mr. Tossa has not sought to proceed *in forma pauperis* and is not indigent. Although this case began with numerous parties and claims, at this stage, only one claim remains. Mr. Tossa has personal knowledge of every element of his claim. Accordingly, defendants respectfully request that the Court refrain from requesting representation for Mr. Tossa.

## Background

On June 12, 2014, four members of the Tossa family, through their attorneys, brought this civil action asserting four constitutional violations and one tort claim against seventeen law enforcement officers (including two emergency dispatchers). (Dkt. 1, 6). For over three years, plaintiffs were represented by at least three attorneys from two law firms who investigated the relevant claims and defenses, completed discovery, and briefed numerous motions on plaintiffs' behalf. (*See* Dkt. 53, 56, 72, 73, 80, 91, 109, 115, 121, 134).

During the litigation, the Court dismissed ten defendants, three plaintiffs, and all claims but Mr. Tossa's claim for excessive force. (*See* Dkt. 49) (dismissing plaintiffs' tort claim); (Dkt. 63) (dismissing plaintiffs' challenge to the search warrant and knock-and-announce claim); (Dkt. 70) (dismissal of defendants Tsouroullius, Kaufman, Dupre, Hall, and Sterling Heights); (Dkt. 87) (dismissal of

defendants Bresinski and Stechly); (Dkt. 89) (dismissal of defendant Unterbrink); (Dkt. 90) (dismissal of defendant Hopkins); (Dkt. 95) (dismissal of defendant Powell); (Dkt. 117) (entry of summary judgment in favor of defendants against plaintiffs Rhonda and Silvia Tossa and dismissing all but one of Mr. Tossa's claims); (Dkt. 129) (dismissal of plaintiff Rakia Tossa).

Mr. Tossa's remaining excessive force is asserted under the Fourth Amendment. (*See* Dkt. 6, 117). Therefore, the individual defendants (rather than the United States or the DEA) face personal liability for any damages in this case. *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see also* 28 C.F.R. § 50.15(c)(3) & (4).

At trial, Mr. Tossa's claim will be resolved based on a simple factual dispute. He claims that a DEA agent grabbed him by the neck, forced him to his bare knees, dragged him across a concrete patio to his lawn, knelt on his back, and allegedly suffocated him until he nearly passed out. (Exhibit 1: Pl. Dep. at 85–126). Meanwhile, defendants testified that they escorted Mr. Tossa out of the house by his arm and that the understandable stress of the situation caused Mr. Tossa, who has pre-existing asthma, to have a mild asthma attack. (Exhibit 2: Holton Dep. at 63–66); (Exhibit 3: Fitch Dep. 25–32); (Exhibit 4: Am. Cplt. at ¶ 32(b)); (Exhibit 5: Pl. Int. Rs. #10 (noting multiple daily breathing treatments)). Thus, at trial, Mr. Tossa's only task is to tell his story and let the jury weigh his credibility.

Until October of 2017, Mr. Tossa was represented by at least three attorneys from two different law firms, who actively litigated his case. (*See* Dkt. 130). However, despite the simplicity of the remaining issue for trial, all of Mr. Tossa's attorneys moved to withdraw from the case after Mr. Tossa did not cooperate with them. (*See* Dkt. 130). According to his former counsel, leading up to trial, Mr. Tossa failed to attend meetings with his attorneys or return phone calls and texts. (Dkt. 130). At the hearing on the withdrawal motion, Mr. Tossa did not oppose or object to the withdrawal of all of his attorneys, even after the Court informed him that he may have to proceed to trial without an attorney.

Prior to their withdrawal, Mr. Tossa's former attorneys worked on a contingency fee basis, as demonstrated by their recently filed lien. (Dkt. 140). He admits that he never paid his former attorneys any money for their services. This is consistent with common practice for cases alleging constitutional violations, which are almost exclusively litigated on a contingency-fee basis.

After Mr. Tossa's attorneys withdrew, he stated that he contacted approximately five other attorneys, but those attorneys declined to represent him. Mr. Tossa has found an attorney who will consult with him about this litigation on an hourly-fee basis, but that attorney will not enter an appearance on Mr. Tossa's behalf or appear in court.

Mr. Tossa is 72 years old. (Ex. 1: Pl. Dep. at 5). He was born in Iraq, but has lived and worked in the United States since 1979. (*Id*. at 10). He became a U.S. citizen in 1983. (*Id*.at 10). He has a degree in mathematics from the University of Baghdad and, after earning his undergraduate degree, he earned a degree from a technical school in Heidelberg, Germany. (*Id*.at 8, 14). Mr. Tossa speaks English, Arabic, and Chaldean. (*Id*. at 6). He also lived in Germany for ten years. (*Id*. at 8). From 2003 to 2005, the U.S. military paid Mr. Tossa to work as a civilian translator. (Ex. 5: Pl. Int. Rs. ##2, 20); (Plaintiff's Response to Defendants' Motion for Partial Dismissal, PgID 570). At the most recent status conference, Mr. Tossa represented to the Court that he had observed and facilitated interrogations by the U.S. military while he was a translator in Iraq.

From the mid-1980s until he retired in 2014, Mr. Tossa worked as a press operator in Southfield, Michigan and earned approximately $50,000 per year. (*Id*. at 16-17, 56). The Court may wish to inquire of Mr. Tossa his annual salary in 2005 and 2006, when he provided translation services for a defense contractor. (*See* Ex. 5: Pl. Int. Rs. ##2, 20). (A protective order, entered during discovery, currently requires the pertinent deposition pages to be filed under seal. *See* Dkt. 79.) He receives approximately $1,100 per month from Social Security. (Ex. 1: Pl. Dep. at 17, 56). Mr. Tossa owns his own car.

Mr. Tossa's cognitive ability has been tested by a psychology expert. She concluded that his cognitive function was normal. (Exhibit 6: Rinnas Report at 27).

Mr. Tossa has 30% hearing loss in his right ear and 80% hearing loss in his left. (Ex. 1: Pl. Dep. at 154–55). He was prescribed a hearing aid for his left ear in 2013, but he does not wear it all the time. (*Id*. at 154–55). At the most recent status conference, Mr. Tossa was not wearing his hearing aid, although he did have it with him.

At that status conference, the Court asked Mr. Tossa if he was willing to represent himself twice. Both times, Mr. Tossa replied that he believed he could represent himself, based on his experience facilitating U.S. military interrogations. Mr. Tossa did not initiate the Court's inquiry into the appointment of counsel.

## Argument

Mr. Tossa has not asked to proceed *in forma pauperis*. He would not qualify as indigent if he made such a request. Further, this case is not an "exceptional circumstance" warranting a request by the Court for counsel on Mr. Tossa's behalf. First, Mr. Tossa himself is responsible for the withdrawal of his retained counsel, and he did not object to his retained counsels' withdrawal. Next, he would likely be able to obtain contingency-fee counsel if his case were meritorious. Further, Mr. Tossa is capable of representing himself at trial.

**A.    Mr. Tossa Does Not Qualify for Representation Under the *In Forma Pauperis* Statute**

"Appointment of counsel in a civil case is not a constitutional right." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).  However, courts may request representation for a party in a civil case under the *in forma pauperis* statute, 28 U.S.C. § 1915(e).  *See Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988).

Under 28 U.S.C. § 1915, "the court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  However, the Court must "dismiss the case" if it later learns that "the allegation of poverty is untrue."  28 U.S.C. § 1915(e)(1).  *Sears, Roebuck & Co.*, 865 F.2d at 23 (". . . it is clear that the statute only allows appointment where a litigant is indigent.").

Here, Mr. Tossa does not qualify for representation under the statute. To do so under § 1915(e), the party seeking to proceed *in forma pauperis* must first demonstrate by affidavit that he is indigent. *Brogue v. Fort Knox Fed. Credit Union*, 114 F.3d 1186 (6th Cir. 1997) ("The district court's review of an application for pauper status is normally based solely on the party's affidavit of indigency").  Mr. Tossa has not asked to proceed *in forma pauperis* in this case, and he has not submitted an affidavit demonstrating that he is indigent. Therefore, it is unnecessary to consider whether it is appropriate for the Court to request representation on his behalf.

Even if Mr. Tossa did seek to proceed *in forma pauperis*, he would not qualify as indigent. "Although pauper status does not require absolute destitution, the question is whether the court costs can be paid without undue hardship." *Foster v. Cuyahoga Dep't of Health & Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). For instance, the Sixth Circuit upheld a district court decision that a plaintiff who "owns a car which is apparently paid for, and [] his spouse receives Social Security disability" did not qualify for pauper status, even though he was "selling plasma" to "pay a phone bill." *Marceaux v. Democratic Party*, 79 F. App'x 185, 186 (6th Cir. 2003).

Here, Mr. Tossa can pay the remaining court costs without undue hardship because, at this time, there are no remaining court costs. His attorneys paid the filing fee, all of the discovery costs, and have provided Mr. Tossa a copy of the file. (*See* Dkt. 137) (noting that plaintiff's attorneys agreed to provide him with the file upon their withdrawal). There is no separate fee to proceed to trial. At trial, Mr. Tossa would presumably present testimony from himself and his immediate family.

Further, Mr. Tossa has income and assets sufficient to cover any costs he might incur. He owns his own car. He likely has retirement savings from working for more than thirty years as a press operator, at a wage well above the national average. For three years, he received payment for work as a translator to the U.S. military in a war zone. He also receives monthly social security payments.

More importantly, though, Mr. Tossa did not lose his retained counsel because he could not pay them—Mr. Tossa is proceeding *pro se* because he refused to cooperate with his former counsel.

## B.    Appointment of Counsel is Not Appropriate

Even for an indigent party, a request for representation under 28 U.S.C. § 1915(e) "is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993).

"In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'" *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). "This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* (quotations omitted).

However, courts in the Sixth Circuit rarely appoint counsel to indigent parties, even in relatively complex cases. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993); *see also Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 915–16 (6th Cir. 2009); *Alexander v. Meckstroth*, 52 F. App'x 719, 720 (6th Cir. 2002) (holding that a case alleging Eighth Amendment violations presented "a single, non-complex issue" that could be handled by an incarcerated pro se plaintiff).

For instance, in *Garrison*, several inmates at different penitentiaries, proceeding *in forma pauperis*, joined in a potential class-action suit under the

9

Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*, alleging that the Michigan Department of Corrections had improperly restricted their religious practice. *Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 915–16 (6th Cir. 2009). The inmates moved for appointment of counsel because of "their indigence," because they were "uneducated," because "one plaintiff had already been transferred to another facility, thus making communication about their common suit difficult," and because of "the complexity of the issues." *Id.* at 916. The district court denied the prisoners' motion and the Sixth Circuit upheld, because the prisoners' case did not constitute an exceptional circumstance under § 1915(e). *Id.* at 917–18.

Here, Mr. Tossa is capable of presenting his case to a jury. Mr. Tossa is a well-educated, competent adult. A psychologist examined him and determined that he had no cognitive impairments. He speaks several languages and speaks English well enough to earn a salary as a translator. He can easily articulate the facts that he believes entitle him to relief, and he has done so at his deposition and to several news outlets. Also, the Federal Rules of Evidence, and this Court's Local Rules are available for free online.[2]  Mr. Tossa has suffered some hearing loss, but this may

---

[2] Although Mr. Tossa may not have detailed knowledge of federal civil procedure, it is not exceptional for a *pro se* litigant to be unfamiliar with detailed legal procedures and forms. *See, e .g.*, *Garrison*, 333 F. App'x at 917–18 (upholding denial of motion to appoint counsel for "uneducated" incarcerated plaintiffs). Further, under the applicable standard, it is not necessary for Mr. Tossa to be familiar with the details

be remedied by having Mr Tossa utilize the hearing aid his doctor prescribed several years ago.

The remaining factual and legal issues are not complex. The central remaining issue is whether Mr. Tossa's version of events is true. He was personally present for all of the relevant events, and he can personally testify regarding every element of his claim. Mr. Tossa need not present an expert, such as a doctor to prevail in a medical malpractice case or an accountant in a commercial litigation case.

In addition, "[a]ppointment of counsel pursuant to 28 U.S.C. § 1915(d) is not appropriate when a pro se litigant's claims are frivolous, or when the chances of success are extremely slim." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (quoting *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir.1985)) (internal citations omitted).

Here, Mr. Tossa's chances of success, even with counsel, are slim. Mr. Tossa alleges that he was violently removed from his home by DEA agents while they were executing a lawful warrant. However, he admits that this allegedly violent removal did not leave a single scratch or bruise on him. (Ex. 1: Pl. Dep. at 146). His own

---

of federal procedure, but instead he need only be able to relate the substance of his claim to the jury at trial. *See, e.g., Mitchell v. Navarro*, No. 14-CV-13185, 2014 WL 4987423, at *3 (E.D. Mich. Oct. 7, 2014) (Drain, J.) (rejecting the argument that appointment of counsel is proper simply because the pro se plaintiff was unfamiliar with legal form when plaintiff could present the substance of her claim).

testimony shows that the DEA agents were never so aggressive that it left any mark whatsoever on a 70-year-old man wearing only shorts and a t-shirt. Accordingly, it is unlikely that a jury will accept Mr. Tossa's version of events, which involves him being dragged across a concrete patio on his bare knees. (*See, e.g.*, Ex. 1: Pl. Dep. at 96).

Finally, Mr. Tossa is proceeding without counsel because of his own failure to cooperate with his retained counsel, not because of indigency. Similarly, there is no indication that Mr. Tossa's inability to find new counsel is because of Mr. Tossa's inability to pay, since this kind of case is almost exclusively litigated on a contingency-fee basis. Instead, Mr. Tossa's difficulty securing new counsel may result from multiple attorneys concluding that his claim lacks merit. Accordingly, this is not the kind of "exceptional circumstance" that Congress intended to remedy when it provided courts with the ability to request representation for indigent parties when it enacted the *in forma pauperis* statute. *See Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016) ("Congress enacted the *in forma pauperis* (IFP) statute, now codified at 28 U.S.C. § 1915, to ensure that indigent litigants have meaningful access to the federal courts.") (citation and internal quotation omitted).

## Conclusion

Notwithstanding the concerns that generally attend any *pro se* proceeding, the Court should not request appointment of counsel on behalf of Mr. Tossa. He has not

demonstrated indigency, and he has repeatedly stated he is able to represent himself. Nor does this case rise to the level of an "exceptional circumstance" warranting appointment of counsel. Discovery has concluded, with Mr. Tossa ably represented by his former attorneys. Only one claim now remains for trial, and Mr. Tossa was personally present for all the events at issue. Defendants submit that Mr. Tossa has not met the requirements of 28 U.S.C. § 1915(e), so the Court should refrain from requesting appointment of counsel.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Zak Toomey*
ZAK TOOMEY (MO 61618)
THERESA URBANIC (P68005)
Assistant U.S. Attorneys
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3211
(313) 226-9617
Dated: February 23, 2018          zak.toomey@usdoj.gov

## CERTIFICATION OF SERVICE

I hereby certify that on **February 23, 2018**, I electronically filed the foregoing

paper with the Clerk of the Court using the CM/ECF system.

I further certify that I have mailed by U.S. mail the foregoing paper to the

following non-ECF participants:

Ramsey Tossa
3190 Marc Drive
Sterling Heights, MI 48310

_s/Zak Toomey_
ZAK TOOMEY (MO 61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9617
zak.toomey@usdoj.gov

14